FILED

AUG - 2 2004

LARRY W. PROPES, CLERK
U. S. DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON DIVISION
Case No.: 8:04-1336-13BI

| | |
|---|---|
| CHARLES S. MOORE, | ) |
| | ) |
| PLAINTIFF, | ) |
| | ) |
| v. | ) |
| | ) |
| GREENWOOD SCHOOL DISTRICT NO. 52 | ) |
| BUTCH COBB, ANDY OWINGS, and | ) |
| MICHAEL DOOLITTLE, and JOANNE | ) |
| CAMPBELL in their Individual | ) |
| and official capacities, | ) |
| | ) |
| DEFENDANTS. | ) |

## PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

The Plaintiff Charles S. Moore ("Defendant" or "Moore"), through undersigned counsel,

submits this Memorandum in Opposition to the Motion to Dismiss filed by four of the five

Defendants: Greenwood School District, Butch Cobb, Andy Owings, and Joanne Campbell.

## I.    INTRODUCTION

Defendants accurately summarize Plaintiff's claims against the Defendants. At the outset

however, Plaintiff withdraws certain claims[1], leaving the following at issue:

---

[1] Counts III-IV (Section 1983-Procedural Due Process and Substantive Due Process) against
Defendant Principal Campbell in both her individual and official capacities); Counts III-IV
(Section 1983-Procedural Due Process and Substantive Due Process) against Defendant Board
Members Cobb and Doolittle under any supervisor liability theories; Count VI (Breach of
contract accompanied by fraudulent act) is withdrawn; Count VII (Breach of the Implied
Covenant of Good Faith and Fair Dealing); and Count XI (Defamation) against all Defendant
School District and the named Defendants in their official capacities only.



| Claim | | Defendant |
|-------|--|-----------|
| I | Title IX Retaliation | District |
| II | Sec. 1983-1st Amd. | District, Named Defendants in official and indiv. cap. |
| III | Sec. 1983- Proc. D.P. | District, Cobb & Owings in official and indiv. cap. (withdrawn against Campbell; withdrawn supervisory liability theories) |
| IV | Sec. 1983- Subs. D.P. | District, Cobb & Owings in official and indiv. Cap (withdrawn against Campbell; withdrawn supervisory liability theories) |
| V | Breach of Contract | District |
| VI | Breach of Contract W/ fraudulent act | Withdrawn |
| VII | Breach of Implied Covenant | Withdrawn |
| VIII | Gross Negligence, etc. | All Defendants |
| IX | Tortious Interference | Named Defendants in their individual capacities |
| X | Conspiracy | All Defendants |
| XI | Defamation | Named Defendants in their individual capacities (withdrawn against District and official cap. claims) |

## II.  **SUMMARY OF ALLEGATIONS**

Contrary to Defendants' characterization though, this is not a boilerplate 'failure-to-renew' a teaching and coaching position case. Instead, as alleged in the Complaint, this case is about Defendants' litany of abuses toward Plaintiff for participating in a Department of Education - Office of Civil Rights (OCR) investigation regarding a Title IX issue. Worse still, this mistreatment occurred after the OCR found the first series of Title IX violations and while Defendants were operating under the first Resolution Agreement. The OCR investigated Defendants' mistreatment of Plaintiff and found a second series of Title IX violations, resulting in a second Resolution Agreement with the District.

Though the Complaint alone is sufficient to withstand Defendants' motion, in addition to those allegations in the Complaint, Plaintiff herein will also reference documents relating to the Department of Education (DOE)'s investigations that are collateral but still inherent to the Compliant. Plaintiff is emphatically not attempting or requesting to convert the motion to one for summary judgment. This is reluctantly done as a result of Defendant's efforts to revive fact pleading and its cries of inadequate notice of Plaintiff's allegations. Importantly, this practice is

2

permissible, In re Datastream Systems, Inc., 2000 U.S. Dist. LECIS 1468 (D.S.C. Jan. 14, 2000), and Defendants cannot claim inadequate notice, particularly because the Complaint makes references to such investigations, and, because Defendant entered into Resolution Agreements with the federal government regarding the subject matter of such documents.[2]

## III.    **ARGUMENT**

While concededly ordering their arguments on these multiple claims in a cogent manner, Defendants' ultimately miss the mark. Their Title IX argument conspicuously fails to cite the only Fourth Circuit case (albeit an unpublished decision) on all fours, which is controlling in Plaintiff's favor. They also fail to properly analyze authority from our sister courts. Moreover, the common thread to Defendant's remaining arguments on the remaining eight claims is to resurrect fact pleading in all but name. The Rules of Civil Procedure only require notice pleading, see Rule 8, Fed.R.Civ.P. (the complainant only need provide a "short and plain statement of the claim showing that the pleader is entitled to relief."). The standard is:

> A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of a complaint. These motions should only be granted in 'limited circumstances.' While analyzing defendants' motions, the Court must construe all inference in the light most favorable to the plaintiffs, and the motion should be granted only if the plaintiff have no chance of prevailing on the merits of their arguments.

In re Datastream Systems, Inc., 2000 U.S. Dist. LEXIS 1468 (D.S.C. Jan. 14, 2000)(internal citations omitted). See also Jennings v. Univ. North Carolina at Chapel Hill, 240 F.Supp. 492 (M.D.N.C. 2002)("the issue is not whether a plaintiff will prevail but whether the claimant is entitled to offer evidence to support the claims). As argued below, Defendants have been

---

[2] These documents are: (1) Nov. 27, 2000 ltr from the DOE to the District regarding a sex discrimination complaint (Ex. D); (2) November 2000 Resolution Agreement between the DOE and the District (Ex. E); (3) April 30, 2002 ltr from the DOE to the District regarding the District's noncompliance (Ex. F); (4) December 22, 2003 ltr from the DOE to the District regarding the retaliatory termination and mistreatment of Plaintiff (Ex. G); and (5) the December 2003 Resolution Agreement between the DOE and the District regarding the mistreatment of Plaintiff (Ex. H).

provided fair and adequate notice, and their attempt to heighten pleading specificity requirements should be rejected.

**A.  Title IX Affords Plaintiff a Private Right of Action for Retaliation**

Plaintiff's claim for *compensatory damages* under Title IX rises or falls on whether there is an implied right of action for retaliation under the statute.  For the reasons that follow there is.

By it express language, Title IX provides no private rights of action for victims of discrimination and its only remedy is the termination of federal funding.  Lowrey v. Texas A & M Univ. Sys., 117 F.3d 242, 250 (5th Cir. 1997)(citations omitted).  Despite this congressional silence though, the Supreme Court has already recognized implied private rights of action under the statute.[3]  The Department of Education has issued implementing regulations, which *inter alia,* prohibit retaliation against any individual for participating in any manner in an investigation involving alleged noncompliance with Title IX.  34 C.F.R. section 100.7(e)(copy of regulation attached hereto as Ex. A).  The Supreme Court has yet to address whether private rights of action exist for retaliation claims, but it recently granted *certiorari* on this very issue in an Eleventh Circuit case, Jackson v. Birmingham Bd. Of Directors, 71 U.S.L.W. 3736 (U.S. June 14, 2004)(No 02-1672).

Therefore, controlling authority remains at the Fourth Circuit, which has just recently held that "Title IX likewise includes a private right of action for retaliation." Litman v. George Mason Univ., 2004 U.S. App. LEXIS 3533,*2 (4th Cir. Feb. 25, 2004)(per curiam)(emphasis added).[4]  The Court of Appeals reached such a decision, by relying on prior precedent applying Title VI.  Because Title VI and Title IX are to be interpreted in the same manner, id. (citing Cannon v. University of Chicago, 441 U.S. 677, 695-696, 60 L.E. 2d 560, 99 S.Ct. 1946 (1979)),

---

[3]  Cannon v. University of Chicago, 441 U.S. 677, 695-696, 60 L.E. 2d 560, 99 S.Ct. 1946 (1979).  The Court also has held that money damages can be recovered in a private right of action under Title IX.  Franklin v. Gwinnett County Public Schools, 503 U.S. 60, 117 L.E.2d 2d 208 112 S.Ct. 1028 (1992).
[4]  A copy of the opinion is attached hereto as Ex. B.  Acknowledging the Fourth Circuit's Local Rule 36(c) regarding unpublished opinions, Plaintiff submits this opinion because he did not locate any published Fourth Circuit on point.

and because under <u>Peters v. Jenney</u>, 327 F.3d 307 (4th Cir. 2003), the Court held that Title VI confers a private right of action of retaliation, the same result is required under Title IX.

Our sister courts have explicated more fully why private rights of action for retaliation claims are cognizable under Title IX. The Fifth's Circuit's analysis is instructive in <u>Lowrey v. Texas A & M Univ. Sys.</u>, 117 F.3d 242 (5th Cir. 1997). That Court first untangled the confusing relationships between Title VII and Title IX rights and remedies. It recognized that while VII preempts a private right of action for *employment discrimination* under title IX, Title VII does not preempt Title IX's anti-retaliation provisions, because the anti-retaliation provisions of Titles VII and IX are not identical. For instance, unlike Title IX, Title VII provides no remedy for retaliation against individuals who raise charges of noncompliance with the substantive provisions of Title IX. In further analyzing the issue, that <u>Lowrey</u> Court applied the familiar four-part test enunciated in <u>Cort v. Ash</u>, 422 U.S. 66, 45 L.E.2d 26, 95 S.Ct. 2080 (1975), to conclude that indeed there is a private right of action under Title IX for victims of retaliation. The <u>Lowrey</u> Court went on to cite other precedents recognizing the right, albeit in slightly modified contexts. <u>See</u> <u>also</u> <u>Johnson v. Galen Health Institutes, Inc.</u>, 267 F. Supp. 679 (W.D.Ky. 2003).

Defendant's faith in the Eleventh Circuit's analysis in <u>Jackson v. Birmingham Bd. Of Educ.</u>, 309 F.3d 1333 (11th Cir. 2002), <u>cert.</u> <u>granted</u>, 71 U.S.L.W. 3726 (June 14, 2004) (No. 02-1672) is misplaced. In <u>Jackson</u> the Eleventh Circuit relied on a Supreme Court case involving private rights of action and which was more recent than <u>Cort v. Ash</u> <u>supra</u>. The Supreme Court confronted private rights of action under Title VI (again, Title VI and Title IX are too be construed in a similar manner). In <u>Alexander v. Sandoval</u>, 532 U.S. 275, 149 L.Ed. 2d 517, 121 S.Ct. 1511 (2001), the Supreme Court clarified <u>Cort</u> and analyzed a regulation prohibiting disparate impact practices promulgated under Title VI. The Court ultimately concluded that there was no private right of action under the implementing regulations for Title VI for *disparate impact* discrimination because the statute at issue under Title VI did not prohibit such acts. In

other words, the disparate impact regulation went beyond the statute it was implementing.  See Chandamuri v. Georgetown Univ., 274 F.Supp.2d 71, 82 (D.D.C. 2003)(analyzing Sandoval, Jackson, and Peters).

In Jackson, the Eleventh Circuit adopted a broad interpretation of Sandoval, and focused exclusively on the text of section 901 of Title IX, to determinate that, because the text of Title IX does not expressly provide any private right of action for retaliation, there was no congressional intent to prevent or redress retaliation.  Id.  The error in this approach however, is that the issue is in actuality whether the anti-retaliation regulatory provisions cut to the core of Title IX's ban on intentional discrimination.  While the disparate *impact* regulation in Sandoval was a regulatory overreach and extended congressional intent to prohibit *intentional* discrimination, anti-retaliation provisions promote and are implicit in the right to be free from intentional discrimination.  See Johnson v. Galen Health Institutes, Inc., 267 F. Supp. 679, 695-96 (W.D.Ky. 2003)(adopting the Fourth Circuit's approach in Peters and rejecting the Jackson court's analysis to find an implied right of action under Title IX).

Because retaliation bears an inseparable and symbiotic relationship to intentional discrimination, a federal agency could reasonably conclude that Congress meant to prohibit both. Peters, 327 S.E.2d at 319.  Therefore the correct inquiry is whether the practices opposed constituted intentional discrimination (which would then be actionable) or merely disparate impact practices, which would not be actionable.  Id. at 320.  Here, as alleged in the Complaint, Plaintiff opposed discriminatory practices and not merely disparate impact practices.  Contrary to the Defendants assertion, nowhere in the Complaint does the term "disparate impact" appear, but the Complaint expressly states that Plaintiff "believe that the girls program was being discriminated against." (Complaint, para. 13).

For the foregoing reasons, Defendants' assault on Plaintiff's Title IX claim for compensatory damages should be rejected.

6

**B.** **Without Conceding that He Cannot Seek Compensatory Damages under Title IX, Plaintiff Can Still Seek Equitable Relief Against the School District**

Again, this is an issue that has already been resolved by the Fourth Circuit. In Preston v. Commonwealth of Virginia, 1991 U.S. App. LEXIS 18824,*3 (4th Cir. Aug. 16, 1991)(copy attached hereto as Ex. C), the Court, in analyzing and remanding a claim for retaliation under Title IX, stated that "[w]e find that prospective equitable relief is precisely the type of remedy that furthers the goals of Title IX and that has been approved by prior decisions. See Cannon, 441 U.S. at 705-706." Therefore, regardless of the Court's ruling on the implied right of action issue, Plaintiff should still be permitted to proceed against the School District for equitable relief.

**C.** **Plaintiff's Three Section 1983-Constitutional Claims against the School District Satisfy the Applicable Pleadings Standards Against the District**

The allegations contend in relevant part that:

- An OCR complaint was filed against the School District in 2000 (para 9), and the DOE investigated and concluded that the District was in violation of its Title IX obligations; (para 10-11, Ex. D)
- Plaintiff provided information to the Department of Education (DOE) regarding the funding differences and discrimination; (para. 12, Ex. G)
- The District agreed in writing via a Resolution Agreement to stop violating Title IX,; (para. 19, Ex. E)
- Even while under the first Resolution Agreement, the District continued to violate the statute nonetheless, and it received additional complaints from the DOE, just days before Plaintiff's termination; (para. 19-21, Ex. F)
- Plaintiff spoke to persons at the school, including the Principal, about the District's continuing violations and disregard for the Resolution Agreement; (para. 19,21)
- The School District itself, via the principal and the board members, including the Chairman, not only knew about Doolittle's treatment of Plaintiff but upheld and finalized the termination. (para. 24-26)
- Plaintiff was not permitted to confront his accusers at the Board meeting and he was not provided full and fair notice of his alleged wrongdoing.(para. 25)
- The Board Chairman told Moore that if he supported Title IX he was being disloyal; he also later stated Moore was terminated because he supported Title IX (para. 25,26);
- The Board not only summarily upheld Doolittle's conduct, but it gave no objective reasons for its decision. Additionally, the hearing provided to Plaintiff was significantly different that that provided other terminated employees; (Ex. G)
- Plaintiff's long-tenure with the School District only abruptly ended after his comments about the DOE investigation and Title IX (para. 8; Ex. G);

- The DOE concluded that the District provided pretextual reasons for its treatment of Plaintiff and terminated him in retaliation for statements regarding Title IX; (Ex. G)
- The District and DOE entered into a second Resolution Agreement in December 2003. (Ex. H)

Under these highlighted facts and those others in the Complaint, Plaintiff has clearly met the pleadings requirement[5] under Monell v. Dept. of Social Serv. Of New York, 436 U.S. 658, (1978), which requires that the government entity deprived him of a federally protected right through an official custom, policy, practice, or custom.   The Complaint alleges two of the four ways to demonstrate a custom or policy:   (1) through the decisions of a person with final policymaking authority, and (2) through an omission that manifests deliberate indifference to the rights of citizens. Lytle v. Doyle, 326 F.3d 463, 471 (4th Cir. 2003).

The final decisionmaker in this case was the School Board itself, which for each of Plaintiff's Section 1983 claims was (a) the direct actor to uphold and finalize Plaintiff's termination for speaking out (First Amendment claim), (b) the direct actor to provide Plaintiff with inadequate hearing procedures (Procedural Due Process claim), and (c) the direct actor in its bias against Plaintiff at the hearing. (Substantive Due Process claim).   Though this is not a case with a 'smoking gun' written policy evincing discrimination, in some ways it goes one better. The Board - - the highest decision maker and representative of the School District - - did not merely act through subordinates in a policy but it acted in ham-fisted, forceful, and firsthand unconstitutional manner against Plaintiff.   Moreover, at least some of the Board hearings were audiotaped, which has the potential to provide much more probative evidence than a cold policy stuffed in a personnel manual.

Alternatively, the District's omissions manifested deliberate indifference, because at the time Plaintiff was terminated and mistreated, the School District had (a) been investigated by the Department of Education, (b) been found liable by the Department of Education for violating Title IX, and (c) entered into an ongoing conciliation agreement with the Department of

---

[5] Because Defendants have not contended that Plaintiff failed to plead facts to satisfy the elements to his three Section 1983 claims, Plaintiff will economize and not recite the respective *prima facie* elements case required of each Section 1983 claim.

Education. Put most bluntly, because the District was on 'probation' with its funding source at the time of Plantiff's mistreatment, it clearly was put on a notice and had a duty to train, educate, and follow up with its officials, including the four individual defendants, to cease violating federal law.

For the foregoing reasons, the District's Section 1983 arguments fail.

**D.     Plaintiff's Section 1983-First Amendment Claim against the Defendants in their Supervisory Capacities Satisfy the Pleading Standard for Supervisory Liability**

Plaintiff has clearly alleged the elements for supervisory liability under Section 1983, which are: (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) that there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff. Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir. 1994).

Applying the allegations here to Stroud, Plaintiff has satisfied the standard with regards to his Section 1983-First Amendment claim. Stroud's first elements are  met because as alleged in the Complaint all three supervisory Defendants had actual and personal first-hand knowledge of Doolittle's constitutional injury (retaliatory termination) of Plaintiff for speaking about the Title IX issues. Indeed, the Defendant Principal was present at the termination and Plaintiff spoke with and appeared before the Defendant board members before they announced their predetermined sentence.   The second element is met because these three supervisors (again the principal and two board members) went far beyond mere inadequate responses or tacit authorization to provide a ringing endorsement of the unconstitutional act. Assuming *arguendo* that the Resolution Agreement did not put the Defendants on notice that Doolittle was a loose cannon, these Defendants still had time to rectify Doolittle's transgressions.  Finally, the third element is met because the causal link between the three supervisors' inaction and Plaintiff's injury is self-evident.

**E.     The Individual Defendants are not entitled to Qualified Immunity on Plaintiff's Three Section 1983-Constitutional Claims**

The familiar test for qualified immunity analysis is whether the defendant has engaged in conduct that violates clearly established constitutional rights of which a reasonable person would have known.  Pritchard v. Alford, 973 F.2d 307, 312 (4th Cir. 1992).  A court should identify: (1) the specific right allegedly violated; (2) determine whether at the time of the alleged violation the right was clearly established; (3) whether a reasonable person in the Defendant's position would have known that doing what he did would violate that right.  See id; Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982).  Here, for all three of these claims this is not a situation where Plaintiff is 'pushing the envelope' to create a new right wholesale or even identify rights in novel situations.  The "salient question" of whether the state of the law at the time gave these officials fair warning that their conduct was unconstitutional is answered plainly in the affirmative.  See Hope v. Pelzer, 122 S.Ct. 2508, 153 L.E2d. 666 (U.S. 2002).

Plaintiff plainly alleged sufficient specificity his First Amendment claim.  It is unfathomable that Defendants are seriously contending that Plaintiff's discussions about Title IX, particularly when the District had been investigated and was operating under a Conciliation Agreement and involved federal public monies, are not somehow issues of public concern.  A school teacher's free speech right to speak to his principal, and a federal investigative agency, about issues involving federal law was clearly established in May 2002 such that the Principal and two Board members should have been aware of such a right.  See Love-Lane v. Martin, 353 F.3d 766 (4th Cir. 2004)(denying qualified immunity because such a right existed in 1997);  see generally Mt. Healty City Bd. Of Ed. V. Doyle, 429 U.S. 274 (1977).

Plaintiff also plainly alleged sufficient specificity for his procedural due process claims against the two board member Defendants.  As alleged in the Complaint, Defendants failed to

provide this public employee Plaintiff, who was facing termination, with oral or written notice of charges against him; an explanation of employer's evidence; the opportunity to present his side of story, or confront witnesses. Defendants cannot seriously contend that such a right was not clearly established in May 2002. See generally  Cleveland Board of Education v. Loudermill, 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494, (1985); Goodrich v. Newport News School District, 743 F.2d 225 (4th Cir. 1984); Green v. Clardon County School District Three, 923 F. Supp. 829 (D.S.C. 1996).    The Defendants references to the South Carolina state law regarding teachers is a read herring--Plaintiff is not claming a violation of S.C. statutory law but instead the more elementary and fundamental procedural due process protections afforded all public employees.

Plaintiff also alleged sufficient specificity for his substantive due process claims against the two board member Defendants. The Fourteenth Amendment's substantive due process right to an impartial hearing, without prejudgment or bias of the case by a school board, was established prior to the May 2002 school board hearing in this case. See generally Schweiker v. McClure, 456 U.S. 188, 195, 72 L.Ed.2d 1, 102 S.Ct. 1665 (1992); Brenna v. Southern Colorado State College, 589 F.2d 475, 476-77 (10thCir 1978); Barnett v. Atlanta Housing Authority, 707 F.2d 1571, 1577-78 (11th Cir. 1983).    Plaintiff is dumbfounded if Defendants are seriously arguing that his right to an unbiased school board termination hearing  was not clearly established in May 2002 such that two school board members were unaware of such a right. This untenable position -- that school boards are free to hold kangaroo courts with predetermined verdicts -- only serves to perpetuate malignant stereotypes regarding the South Carolina public school system.

For the foregoing reasons, Defendants are not entitled to qualified immunity.

**F.    Plaintiff's Five South Carolina Claims Satisfy the Pleadings Requirements**

In the arguments against the South Carolina state law claims, Defendants continue their quest to introduce fact pleading back into the federal rules. "Lawsuits are to be determined on

the merits, and not whether plaintiffs meet technical exactness when pleading." <u>Jennings v.</u> <u>Univ. North Carolina at Chapel Hill</u>, 240 F.Supp. 492, 502 (M.D.N.C. 2002) (citing <u>Furnoco</u> <u>Constr. Corp. v. Waters</u>, 438 U.S. 567, 577, 57 L.Ed2d 957, 98 S.Ct. 2943 (1978)). <u>See also</u> <u>In</u> <u>re Datastream Systems, Inc.</u>, 2000 U.S. Dist. LEXIS 1468 (D.S.C. Jan. 14, 2000). Again, the issue whether Defendants have been fairly put on notice, not whether Plaintiff has alleged every factual detail.

Plaintiff clearly alleged the elements to state a claim for breach of contract, that: (1) the parties had a valid enforceable contract, (2) the defendant breached the contract, and (3) the plaintiff suffered damages resulting therefrom. Defendant's hypertechnical assertions to the contrary, the School District plainly has ample notice as to what Plaintiff intends to prove.

As with Plaintiff's contract claim, the Complaint also contains sufficient allegations to plead gross negligence, recklessness, and willfulness. Again, Defendant's hypertechnical assertions to the contrary, the School District plainly has ample notice as to what Plaintiff intends to prove.

With respect to the tortuous interference claim, Plaintiff plead all necessary elements: (1) the existence of a valid contract; (2) the wrongdoer's knowledge thereof; (3) his intentional procurement of its breach; (4) absence of justification; and (5) resulting damages. <u>Camp v.</u> <u>Springs Mortgage Corp.</u>, 310 S.C. 514, 514, 426 S.E.2d 304, 305-06 (1993). Defendants' argument ignores that the individual Defendants are all third parties who interfered with Plaintiff's contract with the School District. Again, Defendant's hypertechnical assertions to the contrary, the Defendants plainly have ample notice as to what Plaintiff intends to prove.

Plaintiff's conspiracy claim against the individual Defendants also passes muster. Defendants do not dispute that he plead the necessary elements to this claim, but again, offer hypertechnical arguments, ignoring that to the contrary, the Defendants have ample notice as to what Plaintiff intends to prove.

Finally, Plaintiff's defamation claim against the individual Defendants is also sufficient.

The Complaint clearly satisfies the pleading requirements to state a defamation claim: (1) a false and defamatory statement concerning another; (2) an unprivileged publication to a third party; (3) fault on the part of the publisher; and (4) either action ability of the statement irrespective of special harm or the existence of special harm causes by the publication. Boone v. Sunbelt Newspapers, Inc., 347 S.C. 571, 580, 556 S.E.2d 732, 737 (Ct. App. 2001). Again, the Defendants have ample notice as to what Plaintiff intends to prove.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff requests the Court deny the Motion to Dismiss *en toto*. Additionally, Defendants' argument that the pendent state law claims be dismissed if the federal claims are dismissed is not only premature but also fails to recognize that Plaintiff's claims sound in diversity as well as federal question jurisdiction.

Respectfully submitted,

_____

Robert M. Sneed, Esq. (Fed. Bar # 7437)
**FOSTER LAW FIRM, L.L.P.**
601 East McBee Avenue
Post Office Box 2123
Greenville, South Carolina 29602
(864) 242-6200
(864) 233-0290(facsimile)

**ATTORNEYS FOR PLAINTIFF**

Dated this 26 day of July, 2004

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON DIVISION
Case No.: 8:04-1336-13BI

CHARLES S. MOORE,                          )
                                           )
            PLAINTIFF,                     )
                                           )
v.                                         )        **CERTIFICATE OF SERVICE**
                                           )
GREENWOOD SCHOOL DISTRICT NO. 52           )
BUTCH COBB, ANDY OWINGS,                   )
MICHAEL DOOLITTLE, and JOANNE              )
CAMPBELL IN THEIR INDIVIDUAL AND           )
OFFICIAL CAPACITIES,                       )
                                           )
            DEFENDANTS.                    )

I hereby certify that a copy of the PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS was served upon counsel for the Defendants in the above-styled action, by United States mail thereon, and addressed as follows:

Andrea E. White, Esq.
Duff, Turner, White & Boykin, LLC
P.O. Box 1486
Columbia, SC 29202

Robert M. Sneed   (Fed. Bar No.: 7437)
**FOSTER LAW FIRM, LLP**
P.O. Box 2123
Greenville, SC  29602
(864) 242-6200
(864) 233-0290 (Facsimile)

Dated this _____ day of July, 2004

14

# EXHIBIT NO.   A

LEXSTAT 34 C.F.R. 100.7

LEXIS PUBLISHING'S CODE OF FEDERAL REGULATIONS
Copyright © 2004, LEXIS Publishing

*** THIS SECTION IS CURRENT THROUGH THE JULY 22, 2004 ISSUE OF ***
*** THE FEDERAL REGISTER ***

TITLE 34 -- EDUCATION
SUBTITLE B -- REGULATIONS OF THE OFFICES OF THE DEPARTMENT OF EDUCATION
CHAPTER I -- OFFICE FOR CIVIL RIGHTS, DEPARTMENT OF EDUCATION
PART 100 -- NONDISCRIMINATION UNDER PROGRAMS RECEIVING FEDERAL ASSISTANCE
THROUGH THE DEPARTMENT OF EDUCATION EFFECTUATION OF TITLE VI OF THE CIVIL RIGHTS
ACT OF 1964

*34 CFR 100.7*

§ 100.7 Conduct of investigations.

(a) Periodic compliance reviews. The responsible Department official or his designee shall from time to time review the practices of recipients to determine whether they are complying with this part.

(b) Complaints. Any person who believes himself or any specific class of individuals to be subjected to discrimination prohibited by this part may by himself or by a representative file with the responsible Department official or his designee a written complaint. A complaint must be filed not later than 180 days from the date of the alleged discrimination, unless the time for filing is extended by the responsible Department official or his designee.

(c) Investigations. The responsible Department official or his designee will make a prompt investigation whenever a compliance review, report, complaint, or any other information indicates a possible failure to comply with this part. The investigation should include, where appropriate, a review of the pertinent practices and policies of the recipient, the circumstances under which the possible noncompliance with this part occurred, and other factors relevant to a determination as to whether the recipient has failed to comply with this part.

(d) Resolution of matters. (1) If an investigation pursuant to paragraph (c) of this section indicates a failure to comply with this part, the responsible Department official or his designee will so inform the recipient and the matter will be resolved by informal means whenever possible. If it has been determined that the matter cannot be resolved by informal means, action will be taken as provided for in § 100.8.

(2) If an investigation does not warrant action pursuant to paragraph (1) of this paragraph (d) the responsible Department official or his designee will so inform the recipient and the complainant, if any, in writing.

(e) Intimidatory or retaliatory acts prohibited. No recipient or other person shall intimidate, threaten, coerce, or discriminate against any individual for the purpose of interfering with any right or privilege secured by section 601 of the Act or this part, or because he has made a complaint, testified, assisted, or participated in any manner in an investigation, proceeding or hearing under this part. The identity of complainants shall be kept confidential except to the extent necessary to carry out the purposes of this part, including the conduct of any investigation, hearing, or judicial proceeding arising thereunder.

**HISTORY:** [*45 FR 30918,* May 9, 1980]

**AUTHORITY:** (Sec. 601, 602, Civil Rights Act of 1964; 78 Stat. 252; *42 U.S.C. 2000d,* 2000d-1)

**EXHIBIT NO.  B**

LEXSEE 2004 U.S. APP. LEXIS 3533

**ANNETTE GRECO LITMAN, Plaintiff-Appellant, and UNITED STATES OF AMERICA, Intervenor/Plaintiff, v. GEORGE MASON UNIVERSITY; GEOFFREY ORSAK; GIRARD MULHERIN, Defendants-Appellees, and EUGENE M. NORRIS, Defendant. NATIONAL WOMEN'S LAW CENTER; AMERICAN ASSOCIATION OF UNIVERSITY WOMEN; AAUW LEGAL ADVOCACY FUND; AMERICAN CIVIL LIBERTIES UNION WOMEN'S RIGHTS PROJECT; AMERICAN CIVIL LIBERTIES UNION OF VIRGINIA, INCORPORATED; CENTER FOR WOMEN POLICY STUDIES; CONNECTICUT WOMEN'S EDUCATION AND LEGAL FUND; EQUAL RIGHTS ADVOCATES; FEMINIST MAJORITY FOUNDATION; NATIONAL ORGANIZATION OF WOMEN; NATIONAL PARTNERSHIP FOR WOMEN AND FAMILIES; NORTHWEST WOMEN'S LAW CENTER; NOW LEGAL DEFENSE AND EDUCATION FUND; TITLE IX ADVOCACY PROJECT; TRIAL LAWYERS FOR PUBLIC JUSTICE; WOMEN EMPLOYED; WOMEN'S LAW PROJECT; WOMEN'S SPORTS FOUNDATION; UNITED STATES OF AMERICA, Amici Supporting Appellant.**

No. 01-2128

**UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT**

*92 Fed. Appx. 41; 2004 U.S. App. LEXIS 3533*

**December 17, 2003, Submitted**
**February 25, 2004, Decided**

**NOTICE:** [*1] RULES OF THE FOURTH CIRCUIT COURT OF APPEALS MAY LIMIT CITATION TO UNPUBLISHED OPINIONS. PLEASE REFER TO THE RULES OF THE UNITED STATES COURT OF APPEALS FOR THIS CIRCUIT.

**PRIOR HISTORY:** Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria. (CA-97-1755-A). James C. Cacheris, Senior District Judge. *Litman v. George Mason Univ., 156 F. Supp. 2d 579, 2001 U.S. Dist. LEXIS 11710 (E.D. Va., 2001)*

**DISPOSITION:** Affirmed in part; and vacated and remanded in part.

**COUNSEL:** Annette Greco Litman, Reston, Virginia, Appellant Pro se.

Ronald Curtis Forehand, William Eugene Thro, OFFICE OF THE ATTORNEY GENERAL OF VIRGINIA, Richmond, Virginia, for Appellees.

Dina R. Lassow, NATIONAL WOMEN'S LAW CENTER, Washington, D.C., for Amici Curiae National Women's Law Center, American Association of University Women, AAUW Legal Advocacy Fund, American Civil Liberties Union Women's Rights Project, American Civil Liberties Union of Virginia, Incorporated, Center for Women Policy Studies, Connecticut Women's Education and Legal Fund, Equal Rights Advocates, Feminist Majority Foundation, National Organization of Women, National Partnership for Women and Families, Northwest Women's Law Center, NOW Legal Defense and Education Fund, Title IX Advocacy Project, Trial Lawyers for Public Justice, [*2] Women Employed, Women's Law Project, Women's Sports Foundation; Linda Frances Thome, Seth Michael Galanter, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Amicus Curiae United States of America.

**JUDGES:** Before NIEMEYER, MICHAEL, and TRAXLER, Circuit Judges.

92 Fed. Appx. 41; 2004 U.S. App. LEXIS 3533, *

**OPINION:** PER CURIAM:

Annette Greco Litman appeals from the order of the district court denying relief on her claims relating to sexual harassment, gender-based discrimination, and retaliation. With regard to Litman's claims unrelated to retaliation, we have reviewed the record and find no error. Accordingly, we affirm as to those claims on the reasoning of the district court. *See Litman v. George Mason Univ., 5 F. Supp. 2d 366 (E.D. Va. 1998); Litman v. George Mason Univ., 131 F. Supp. 2d 795, (E.D. VA. 2001)*,(E.D. Va., Jan. 22, 1998; Filed June 14, 2000, & Entered Jun. 15, 2000).

With regard to Litman's remaining claim of retaliation, after entry of final judgment in the district court, this court decided *Peters v. Jenney, 327 F.3d 307 (4th Cir. 2003)*, holding that Title VI confers a private right of action for retaliation. Because Title VI and Title IX are to be interpreted in the same manner, *see Cannon v. University of Chicago, 441 U.S. 677, 694-96, 60 L. Ed. 2d 560, 99 S. Ct. 1946 (1979)*, [*3] the decision in *Peters* compels the conclusion that Title IX likewise includes a private right of action for retaliation. Accordingly, we vacate that part of the district court's order dismissing Litman's retaliation claim and remand for further proceedings consistent with this opinion.

We deny Litman's pending motions to compel supplemental briefing and to file a reply brief. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

*AFFIRMED IN PART; VACATED AND REMANDED IN PART*

Copyright 2004 SHEPARD'S - 6 Citing references

**Litman v. George Mason Univ., 92 Fed. Appx. 41, 2004 U.S. App. LEXIS 3533 (2004)**

***SHEPARD'S(R) Signal: Citing Refs. With Analysis Available***
Restrictions: *Unrestricted*
FOCUS(TM) Terms: *No FOCUS terms*
Print Format: *FULL*
Citing Ref. Signal: *Hidden*

**SHEPARD'S SUMMARY**

        ***Shepard's* FULL Summary:**
**No subsequent appellate history. Prior history available.**
**Citing References: None**

**PRIOR HISTORY ( 6 citing references )**

1.  *Litman v. George Mason Univ.*, 5 F. Supp. 2d 366, 1998 U.S. Dist. LEXIS
    6557 (E.D. Va. 1998)

2.  **Affirmed by:**
    *Litman v. George Mason Univ.*, 186 F.3d 544, 1999 U.S. App. LEXIS 17825, 76 Empl. Prac. Dec. (CCH)
    P45993 (4th Cir. Va. 1999)

3.  **Writ of certiorari denied:**
    *George Mason Univ. v. Litman*, 528 U.S. 1181, 145 L. Ed. 2d 1120, 120 S. Ct. 1220, 2000 U.S. LEXIS
    1427, 68 U.S.L.W. 3535 (2000)

4.  **Summary judgment granted, in part, summary judgment denied, in part**
    **by, Motion denied by:**
    *Litman v. George Mason Univ.*, 131 F. Supp. 2d 795, 2001 U.S. Dist. LEXIS 2125 (E.D. Va. 2001)

5.  **Count dismissed at, Motion denied by:**
    *Litman v. George Mason Univ.*, 156 F. Supp. 2d 579, 2001 U.S. Dist. LEXIS 11710 (E.D. Va. 2001)

6.  **Criticized in:**
    *Johnson v. Galen Health Insts., Inc.*, 267 F. Supp. 2d 679, 2003 U.S. Dist. LEXIS 11903 (W.D.
    Ky. 2003)

    ***Subsequent appeal at, Remanded by, in part (CITATION YOU***
    ***ENTERED):***
    *Litman v. George Mason Univ., 92 Fed. Appx. 41, 2004 U.S. App. LEXIS 3533 (2004)*

# EXHIBIT NO.   C

LEXSEE 1991 US APP LEXIS 18824

SUSAN PRESTON, Plaintiff-Appellant, v. COMMONWEALTH OF
VIRGINIA; NEW RIVER COMMUNITY COLLEGE, Defendants-Appellees, and
DAVID R. PIERCE, Chancellor State Board for Community Colleges;
LAWRENCE H. FRAMME, III, Chairman, State Board for Community Colleges;
T. A. CARTER, JR., Board Member, State Board for Community Colleges;
WILLIAM D. DOLAN, III, Board Member, State Board for Community Colleges;
GEORGE H. GILLIAM, Board Member, State Board for Community Colleges;
IRVING M. GROVES, JR., Board Member, State Board for Community Colleges;
EVELYN M. HAILEY, Board Member, State Board for Community Colleges;
JACK L. HITE, Board Member, State Board for Community Colleges; GEORGE J.
KOSTEL, Board Member, State Board for Community Colleges; LEONARD W.
LAMBERT, Board Member, State Board for Community Colleges; ROBERT E.
PARKER, JR., Board Member, State Board for Community Colleges; ANITA O.
POSTON, Board Member, State Board for Community Colleges; NELLIE B.
QUANDER, Board Member, State Board for Community Colleges; DOROTHY W.
SCHICK, Board Member, State Board for Community Colleges; GEORGE J.
STEVENSON, Board Member, State Board for Community Colleges; DOREEN S.
WILLIAMS, Vice Chairman, State Board for Community Colleges; FLOYD M.
HOGUE, President, New River Community College; ROGER K. LEWIS, Board
Member, New River Community College Board; KAREN THOMPSON, Board
Member, New River Community College Board; DAVID B. HUNT, Board Member,
New River Community College Board; MARTHA H. BOLT, Board Member, New
River Community College Board; DAVID G. LARSEN, Board Member, New River
Community College; SHIRLEY M. GERKEN, Board Member, New River
Community College Board; WILLIAM H. ELMORE, Board Member, New River
Community College Board; GEORGE F. PENN, SR., Board Member, New River
Community College Board; JERRY R. WHITEHURST, Board Member, New River
Community College Board; LEWIS R. SHECKLER, Board Member, New River
Community College Board; H. B. WHITT, JR., Board Member, New River
Community College Board, Defendants

No. 91-2020

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

*1991 U.S. App. LEXIS 18824*

May 7, 1991, Argued
August 16, 1991, Decided

NOTICE: [*1]

RULES OF THE FOURTH CIRCUIT COURT OF
APPEALS MAY LIMIT CITATION TO

UNPUBLISHED OPINIONS. PLEASE REFER TO
THE RULES OF THE UNITED STATES COURT OF
APPEALS FOR THIS CIRCUIT.

1991 U.S. App. LEXIS 18824, *

**SUBSEQUENT HISTORY:**

*Reported as Table Case at 941 F.2d 1207, 1991 U.S. App. LEXIS 23838.*

**PRIOR HISTORY:** Appeal from the United States District Court for the Western District of Virginia, at Roanoke. James C. Turk, Chief District Judge. CA-90-364-R.

**DISPOSITION:**

REVERSED IN PART AND REMANDED FOR FURTHER PROCEEDINGS

**LexisNexis(R) Headnotes**

**COUNSEL:**

*ARGUED:* Donald Wise Huffman, BIRD, KINDER & HUFFMAN, P.C., Roanoke, Virginia, for Appellant.

Guy Winston Horsley, Jr., Senior Assistant Attorney General, OFFICE OF THE ATTORNEY GENERAL, Richmond, Virginia, for Appellees.

*ON BRIEF:* Kenneth J. Lasky, BIRD, KINDER & HUFFMAN, P.C., Roanoke, Virginia, for Appellant.

Mary Sue Terry, Attorney General, Gail Starling Marshall, Deputy Attorney General, Neil A. G. McPhie, Senior Assistant Attorney General, OFFICE OF THE ATTORNEY GENERAL, Richmond, Virginia, for Appellees.

**JUDGES:**

Russell and Wilkins, Circuit Judges, and Kellam, Senior United States District Judge for the Eastern District of Virginia, sitting by designation. Judge Wilkins wrote the opinion, in which Judge Russell and Senior Judge Kellam joined.

**OPINIONBY:**

WILKINS

**OPINION:** *OPINION*

Susan Preston brought this action claiming [*2] her employer, New River Community College, and the Commonwealth of Virginia retaliated against her for filing a charge of employment discrimination in 1984. The district court granted summary judgment against Preston on her claim under Title VII of the Civil Rights

Act of 1964, *42 U.S.C.A. § 2000e, et seq.* (West 1981), and dismissed her claim under Title IX of the Education Amendments of 1972, *20 U.S.C.A. § 1681, et seq.* (West 1990), for failure to state a claim upon which relief could be granted. We reverse and remand for further proceedings.

I.

Preston is employed by New River Community College as a counselor. In March 1984, she filed a charge with the Office for Civil Rights of the United States Department of Education (OCR) claiming that the college discriminated against her by failing to promote her to the position of career counselor. This charge alleged discrimination on the basis of race and gender.

Preston filed the present action in the district court in June 1990, alleging that she was last denied a promotion in August 1989, that the college has denied her promotions in retaliation for filing the 1984 charge and that her supervisor has harassed her. Defendants [*3] moved to dismiss Preston's complaint pursuant to *Rule 12(b)(6), Federal Rules of Civil Procedure.* In response to the motion, Preston submitted a memorandum of law in which she asserted that in December 1989 she filed a charge with OCR alleging retaliatory discrimination. She attached copies of the 1984 OCR filing and a letter from OCR acknowledging receipt of her December 1989 charge to her memorandum.

Apparently converting the portion of defendants' motion attacking the Title VII action into a motion for summary judgment, the district court found it lacked jurisdiction over the Title VII claim. It rejected Preston's argument that her filing with OCR satisfied the filing requirement of *42 U.S.C.A. § 2000e-5*(e) (West 1981), concluding that Preston had failed to submit evidence sufficient to raise a genuine issue of material fact concerning whether OCR intended to transfer the complaint to EEOC. Additionally, the court dismissed Preston's Title IX claim, finding it failed to state a claim for which relief could be granted.

II.

A charge of discrimination under section 2000e-5 must be filed with the Equal Employment Opportunity Commission "within one hundred and eighty days after [*4] the alleged unlawful employment practice occurred." *42 U.S.C.A. § 2000e-5*(e). This requirement does not limit the jurisdiction of the district court to entertain a later lawsuit, but is a defense similar to a statute of limitations. *Zipes v. Trans World Airlines, 455 U.S. 385, 393-98 (1982).* Preston concedes that she did

1991 U.S. App. LEXIS 18824, *

not file with EEOC during the 180-day period following the denial of her application for promotion in August 1989 n1 but contends that her filing with OCR satisfies the filing requirement.

> n1 The August 1989 denial of promotion is the only adverse employment action for which Preston even arguably made a timely filing.

EEOC regulations provide procedures for agencies to follow in processing and resolving complaints of employment discrimination filed against recipients of federal financial assistance. 29 C.F.R. § 1691.1 (1990). n2 The term "agency" is defined as "any Federal department or agency which extends Federal financial assistance subject to any civil rights provision(s) to [*5] which this regulation applies." 29 C.F.R. § 1691.13(a) (1990). OCR is an agency charged with "the responsibility of ensuring compliance [with Title IX] through . . . complaint resolution." Caulfield v. Board of Educ. of New York, 632 F.2d 999, 1002 (2d Cir. 1980), cert. denied, 450 U.S. 1030 (1981).

> n2 Defendants do not dispute that the college receives federal financial assistance.

Upon receipt of a discrimination complaint, OCR must determine if referral to EEOC is appropriate. See 29 C.F.R. § 1691.5 (1990). The regulations provide that "an agency shall refer to EEOC all joint complaints solely alleging employment discrimination against an individual." 29 C.F.R. § 1691.5(e).

A complaint of employment discrimination filed with an agency, which is transferred or referred to EEOC under this regulation, shall be deemed a charge received by EEOC. For all purposes under Title VII and the Equal Pay Act, the date such a complaint was received by an agency shall be deemed the [*6] date it was received by EEOC.

29 C.F.R. § 1691.6(a) (1990). The district court found that since the OCR letter submitted by Preston did not address whether OCR referred the matter to EEOC, Preston had not made a showing sufficient to survive summary judgment.

While the OCR letter does not specifically identify the August 1989 promotion decision, we conclude that the letter is sufficient to raise a genuine issue of material fact concerning whether Preston is deemed to have complied with the filing requirement of section 2000e-5 when she

filed a complaint with OCR within the 180-day period following the August promotion decision. The letter states that OCR determined it had the authority to investigate Preston's complaint and was assigning it for investigation. Because defendants failed to present evidence that OCR failed to refer the complaint to EEOC, the court must presume that OCR complied with its regulatory directive. Moreover, we do not read section 1691.6(a) as restrictively as did the district court. To permit the agency to retain certain claims of employment discrimination for investigation, but then bar later suits when the agency does so, would be an anomalous result--especially [*7] considering that the purpose of the regulation is to coordinate the processing of claims. Because the record is not fully developed, we are not in a position to say that Preston is or is not deemed to have filed the complaint with EEOC; rather, we find only that the evidence submitted to the district court was sufficient to raise an issue of fact concerning whether Preston's filing with OCR is deemed to be a timely filing with EEOC.

III.

Preston contends that the district court erred in dismissing her Title IX claim. She argues that retaliatory conduct is prohibited by Title IX and that, even if compensatory damages are not available, an issue Preston does not concede, the district court could provide equitable relief should she prove a violation of Title IX. We agree.

An implied private right of action exists under Title IX, Cannon v. University of Chicago, 441 U.S. 677 (1979), which extends to employment discrimination on the basis of gender by educational institutions receiving federal funds, North Haven Bd. of Educ. v. Bell, 456 U.S. 512 (1982). Congress intended that Title IX would be interpreted and enforced in the same manner as [*8] Title VI of the Civil Rights Act of 1964, Cannon, 441 U.S. at 696, and the Department of Education regulations incorporate by reference into Title IX all procedural provisions applicable to Title VI, 34 C.F.R.§ 106.71 (1990). One such provision prohibits retaliatory conduct. 34 C.F.R. § 100.7(e) (1990). Consequently, the Secretary of Education has prohibited retaliation based on the filing of a complaint of gender discrimination under Title IX. We cannot conclude that the Secretary's incorporation of the Title VI provision into Title IX is unreasonable. See Chevron U.S.A. v. Natural Resources Defense Council, 467 U.S. 837 (1984).

We find that prospective equitable relief is precisely the type of remedy that furthers the goals intended by Title IX and that has been approved by prior decisions. See

1991 U.S. App. LEXIS 18824, *

*Cannon, 441 U.S. at 705-06.* Because we find that the district court erred in dismissing Preston's Title IX claim and a remand is required, we decline to address the issue of the availability of damages for an intentional violation of Title IX without the benefit of a more fully developed record.

*REVERSED IN PART AND REMANDED* [*9] *FOR FURTHER PROCEEDINGS*

# EXHIBIT NO.   D



# UNITED STATES DEPARTMENT OF EDUCATION
### OFFICE FOR CIVIL RIGHTS
### 61 FORSYTH STREET, SW
### SUITE 19T70
### ATLANTA, GEORGIA 30303
### TELEPHONE: (404) 562-6350

FAX: (404) 562-6455                    NOV 27 2000                    Email: Atlanta_ocr@ed.gov
TDD: (404) 562-6454


Dr. Gerald Robinson
Superintendent
Greenwood County School District #52
605 Johnston Road
Ninety Six, South Carolina 29666

Dear Dr. Robinson:

Re: Complaint #04-00-1332

On May 30, 2000, the U.S. Department of Education (Department), Office for
Civil Rights (OCR), received a complaint alleging discrimination on the part
of the Greenwood County School District #52 (District). Specifically, the
complainants alleged that the District discriminates on the basis of sex in the
interscholastic athletic program by discriminating against female athletes at
Ninety Six High School in the following areas: (1) locker rooms, practice and
competitive facilities (2) equipment and supplies; (3) travel and per diem; (4)
coaching and (5) the scheduling of games and practice times.

OCR is responsible for enforcing Title IX of the Education Amendments of
1972 (Title IX), as amended, 20 U.S.C. Sections 1681 et seq., and its
implementing regulation 34 C.F.R. Part 106, which prohibit discrimination on
the basis of sex by recipients of Federal financial assistance. The District
receives financial assistance from the Department and, therefore, is subject to
the requirements of Title IX.

OCR conducted an on-site investigation at Ninety Six High School under Title
IX athletic programs are specifically addressed at 34 C.F.R. Section 106.41.
As a means of assessing compliance, OCR follows the Policy Interpretation
issued December 11, 1979, 44 Fed. Reg. 71413 et seq. (1979). In accordance

Dr. Gerald Robinson
Page 2

with the Policy Interpretation, OCR reviewed the athletic programs in the areas listed above.

In each program area, OCR examined whether the availability and quality of benefits, opportunities, and treatment provided were equivalent for members of both sexes. Equivalent is defined as equal or equal in effect. Where disparities were noted, OCR considered whether the differences were negligible. Where the disparities were not negligible, OCR determined whether they were the result of nondiscriminatory factors. Finally, OCR determined whether disparities resulted in the denial of equal opportunity to male or female athletes, either because the disparities, collectively, were of a substantial and unjustified nature or because the disparities in individual program areas were substantial enough alone to deny equality of athletic opportunity.

As a result of our investigation, OCR determined that the District is not providing equivalent benefits, opportunities, and treatment to female students at Ninety Six High School. Specifically, we found that the District did not provide comparable coaching, locker rooms, practice and competitive facilities, equipment and supplies, and travel and per diem. We found that the problem regarding the scheduling of games and practice times was resolved by the District prior to our investigation. During the first part of last season, the softball team was given limited use of lights on the field during practices and the baseball team was not limited in the use of lights. The District resolved the issue last year and gave the softball team unlimited use of lights on the softball field.

To resolve this complaint, the District agreed to undertake the actions outlined in the enclosed agreement. When this agreement is fully implemented, all disparities in the areas investigated will be remedied consistent with the requirements of Title IX. OCR will monitor the District's progress through periodic reports to ensure that actions agreed upon are completed. Compliance is contingent upon implementation of the resolution agreement.

Dr. Gerald Robinson
Page 3

If you have questions regarding this complaint, please contact Mr. Wayne
Awtrey, Investigator, Compliance Team C, at 404/562-6415.

Sincerely,

Gary S. Walker, Director
Atlanta Office, Southern Division
Office for Civil Rights

Enclosure
Cc: Chief School Officer

# EXHIBIT NO.   E

GREENWOOD COUNTY SCHOOL DISTRICT #52
COMPLAINT #04-00-1332
RESOLUTION AGREEMENT

The District agrees to take the following actions to resolve the issues of this complaint. These measures are consistent with Title IX of the Education Amendments of 1972 and its implementing regulation.

## Coaching

The District paid for coaches of boys' and girls' teams to attend the coaching clinic offered by the state. Additionally, the District paid some travel expenses for two assistant football coaches to attend football practices at Virginia Tech and talk with their coaches. No girls' coaches were offered similar opportunities to receive advanced training. Staff understood that the District would pay for only the state training clinic.

To resolve this disparity, the District agreed to provide equivalent compensation for training opportunities for coaches of boys' and girls' teams. By July 1, 2001, the District will send OCR a list of coaches who received any compensation for training received beyond the once a year state training clinic.

## Locker rooms, practice and competitive facilities

The junior varsity volleyball team did not use certified officials to referee their games last season. More boys' teams than girls' junior varsity teams had certified officials.

To resolve the disparity, the District agreed to provide certified officials to boys' and girls' teams on a comparable basis. The District agreed to furnish OCR with a list of all junior varsity competitions for home games which were officiated by certified officials. The information will be provided to OCR by July 1, 2001.

GREENWOOD COUNTY SCHOOL DISTRICT #52
RESOLUTION AGREEMENT
PAGE 2

### Equipment and Supplies

(A)    The softball team's pitching machine was broken last year and was not repaired.  The baseball team has an operational pitching machine.

To resolve the disparity, the District agreed to fix or replace the pitching machine for the softball team.  The District agreed to provide OCR with a written statement from the head sotball coach by July 1, 2001, regarding the condition of the pitching machine in use.

(B)    The softball team had a catcher's mask that broke during the season.  The mask was replaced with the same brand mask and the new mask required adjustments and repairs on a regular basis.  No boys' teams had problems with the quality of equipment and supplies.

To resolve the problem with the catcher's mask, the District agreed to provide a mask by the beginning of softball season that has not been shown by experience to require continual maintenance and that is of adequate quality. The District will submit a statement from the head softball coach by July 1, 2001, attesting to the usability of the catcher's mask.

### Travel and per diem

Only football players are fed pre or post game meals on a regular basis.  To resolve the disparity, the District must provide at least one girls' team with the

**GREENWOOD COUNTY SCHOOL DISTRICT #52**
**RESOLUTION AGREEMENT**
**PAGE 3**

opportunity to receive meals on an equitable basis to the football team and provide OCR with a statement from the coach of the girls' team by December 1, 2001.


_Gerald Robinson_                    _11-10-2000_
Dr. Gerald Robinson                  Date
Superintendent
Greenwood County School District #52


_Gary S. Walker_                     NOV 27 2000
Gary S. Walker, Director,            Date
Atlanta Office, Southern Division
Office for Civil Rights

**EXHIBIT NO.   F**



**UNITED STATES DEPARTMENT OF EDUCATION**
OFFICE FOR CIVIL RIGHTS
61 FORSYTH STREET, SW
SUITE 19T70
ATLANTA, GEORGIA 30303
TELEPHONE: (404) 562-6350

APR 30 2002

Email: Atlanta_ocr@ed.gov

FAX: (404) 562-6455
TDD: (404) 562-6454

Mr. Gerald R. Robinson
Superintendent
Greenwood County School District #52
605 Johnston Road
Ninety Six, South Carolina 29666

Re: Complaint #04-00-1332

Dear Mr. Robinson:

This letter is in response to correspondence received by the Office for Civil Rights (OCR) on November 19, 2001, from the Greenwood County School District (District) and is sent also in response to recent correspondence received from the complainant in this case alleging that the District has not complied with the terms of the resolution agreement made with OCR. OCR is responsible for enforcing Title IX of the Education Amendments of 1972 (Title IX), as amended, 20 U.S.C. Sections 1681 et seq., and the implementing regulation at 34 C.F.R. Part 106. Title IX prohibits discrimination on the basis of sex in programs or activities receiving Federal financial assistance from the Department. Athletic programs are specifically addressed at 34 C.F.R. Section 106.41.

As a result of our prior investigation, the District agreed on November 27, 2000, to resolve the issues of the complaint and entered into a resolution agreement. In February 2002 the complainant sent correspondence to OCR and alleged that the District has not complied with the terms of our agreement and that misleading or false information has been submitted to OCR. Some of the allegations are new allegations not specifically addressed in our original investigation or covered under the terms of the resolution agreement. Please provide us with the information detailed below.

D-6 b

Mr. Gerald R. Robinson
Page 2

Specifically, we need the following information from the District in order to determine the validity of the allegations made by the complainant.

## Equipment and supplies

In the agreement, the District agreed to provide the softball team with a pitching machine in workable condition, batting helmets and a catcher's mask of adequate quality.

The complainant alleged that the District purchased the same brand of inferior inexpensive mask as was purchased when OCR conducted its investigation and the same problems occurred with the new mask. Additionally, it was alleged that the inferior mask once ineffective was not promptly replaced and caused a dangerous situation for the catcher. Please provide a statement from the head coach as to what brand and model of mask was used in the past that was found to be consistently defective and the brands and models purchased since our investigation. The coach should also explain the following in writing: (1) what problems occurred with the mask since our investigation, (2) how often problems occurred, (3) how serious the problems were, (4) whether in the coach's opinion if the problems with the mask caused a safety risk and why or why not, (5) how soon after the mask became defective a new mask was available for the catcher to use, (6) the cost of the mask, (7) how many masks were replaced in a season after our investigation, and (8) the cost, brand and model of mask used by the baseball team.

## Coaching

The District agreed to provide the same level of compensation for coaches attending training for coaches of boys' and girls' teams.

The District provided evidence that compensation provided to all coaches of boys' and girls' teams was identical. However, the complainant alleges that coaches are not paid the same salary. Please provide OCR with a signed statement from the coach in question stating what the coaching stipend is that he/she receives.

Mr. Gerald R. Robinson
Page 2

Specifically, we need the following information from the District in order to ... the validity of the allegations made by the complainant.

Mr. Gerald R. Robinson
Page 3

## Locker rooms, practice and competitive facilities

The District agreed to provide comparable officiating to junior varsity boys' and girls' teams.

We must caution the District that regional rules may be discriminatory and the District is ultimately responsible for assuring that officiating is comparable for all boy and girls' teams. For example, if a conference or region voted to not have certified officials at all volleyball games and more boys' teams had certified officials at competitions, then the rule may be in violation of Title IX, and the District may be in violation of Title IX for implementing a rule that has a discriminatory effect against girls. If no spring sports have officials and more boys' teams have officials than girls' teams the rest of the year, then the District may be in violation of the agreement.

## Travel and per diem

The District agreed to resolve the disparity regarding the provision of meals to only boys' sports teams by giving comparable pre or post game meals to a girls' team.

The complainant alleged significant disparities still exist with regards to providing meals to girls' teams and said that football players were fed twice per week. The District sent OCR a statement from the girls' volleyball coach that stated that girls' were provided with meals on numerous occasions. The coach said that receipts were available upon request. Please provide receipts with dates when meals were provided to volleyball players. Also provide us with dates when football players received meals and indicate whether they were pre game or post game meals. Additionally, explain how often football players were fed at Temple Baptist Church by boosters each week and explain who supplied the meals (donations, etc).

The District should also provide OCR with a list of teams that had meals provided to them (including meals provided by booster clubs and church groups if meals were given to teams) and the dates and places that meals

Mr. Gerald R. Robinson
Page 4

were provided for each team. The report should be by team and the head coach should sign each statement for teams that received meals.

**Publicity**

The complainant alleged that the District refused to accept donated uniforms for the softball team, but then placed an ad in the local paper soliciting money from the public to pay for championship rings for the football team. It was also alleged that the football team accepted meals provided by Temple Baptist Church.

Please respond to these allegations and explain the circumstances if the uniforms were refused, meals accepted from the church, and District staff did place an ad for donations to buy rings for football players. If the allegations are denied, provide OCR with the name and phone number of the head softball coach, head football coach, Athletic Director, written authorization for the newspaper to release information about the person who placed the ad in the paper, and the phone number for the school principal.

Please provide all information requested by OCR to us with 20 days from receipt of this letter. If you have any questions regarding this matter, please contact the investigator assigned to the case, Mr. Wayne Awtrey, at (404) 562-6415.

Sincerely,

Sadie Whitmore, Team Leader
Compliance Team C

**EXHIBIT NO.   G**



**UNITED STATES DEPARTMENT OF EDUCATION**
OFFICE FOR CIVIL RIGHTS
61 FORSYTH STREET, SW
SUITE 19T70
ATLANTA, GEORGIA 30303
TELEPHONE: (404) 562-6350

**FAX: (404) 562-6455**
**TDD: (404) 562-6454**

DEC 2 2 2003

**Email: Atlanta_ocr@ed.gov**

Dr. Dan Powell
Superintendent
Greenwood County School District #52
605 Johnston Road
Ninety Six, South Carolina 29666

Dear Dr. Powell:

Re: Complaint #04-03-1025

This letter is to inform you of the determination of the U.S. Department of Education (Department), Office for Civil Rights (OCR), regarding the above-referenced complaint filed against the Greenwood County School District #52 (District). The Complainant alleged that the District retaliated against him by terminating his coaching contract at the end of the 2001-2002 school year. Specifically, the Complainant alleged that his coaching contract was terminated because he testified in an OCR complaint and because he advocated for female athletes by informing school officials that the number of meals provided to the volleyball team was not equal to that provided to the football team during the 2001-2002 school year.

OCR is responsible for enforcing Title IX of the Education Amendments of 1972 (Title IX), as amended, 20 U.S.C. Sections 1681 et seq., and its implementing regulation, 34 C.F.R. Part 106, which prohibits discrimination on the basis of sex by recipients of Federal financial assistance from the Department. The District is a recipient of Federal financial assistance from the Department and, therefore, subject to the requirements of Title IX.

The standard for determining the District's compliance in regard to retaliation is set forth in the regulation implementing Title VI of the Civil Rights Act of 1964, which is incorporated by reference in the regulation implementing Title IX, at 34 C.F.R. 106.71. The regulation states that no recipient shall intimidate, threaten, coerce, or discriminate against any individual for the purpose of interfering with any right or privilege secured by Title IX or because he/she had made a complaint, testified, assisted, or participated in any manner in an investigation, proceeding or hearing under this part.

In order to establish that unlawful retaliation has occurred, OCR must determine whether: (1) the individual engaged in a protected activity; (2) the recipient was aware of the protected activity; (3) the recipient took adverse actions against the individual contemporaneous with or subsequent

Dr. Dan Powell
Page 2

to the protected activities; (4) there was a causal connection between the adverse actions and the protected activities; and (5) the recipient cannot show legitimate, nondiscriminatory reasons for its actions.

In reaching a determination on this complaint, OCR reviewed documents pertinent to the allegations of this complaint and interviewed District staff, Board of Trustee members (Board) and the Complainant. An on-site investigation was conducted on April 28 through May 2, 2003. As a result of this investigation, OCR has made the following determinations regarding the allegations in this complaint.

## Protected Activity

OCR's records showed that on August 25, 2000, the Complainant was interviewed during an OCR complaint investigation and provided information regarding the treatment of female athletes in the District's athletic program. In its resolution letter issued on November 17, 2000, OCR found disparities in the female athletic program when compared to the male athletic program. The District agreed to correct these disparities, which included providing meals to female athletes on an equivalent basis to male athletes. OCR is currently monitoring the District's actions in this complaint.

In April 2002, after learning that the volleyball team received three meals during the 2001-2002 school year, the Complainant informed the high school principal and the volleyball coach that the football team was still receiving more meals than the volleyball team, in violation of the previous resolution agreement. OCR, therefore, concludes that the Complainant engaged in protected activities covered by Title IX.

OCR only investigated the District's treatment of the Complainant after he engaged in the April 2002 protected activity.

## Knowledge of the Protected Activity

In an interview with the Athletic Director (AD), he stated that he was aware of the conversation that took place in April 2002 between the Complainant, the high school principal, and the volleyball coach in which the Complainant stated that the football team received more meals than the volleyball team during the 2001-2002 school year. OCR, therefore, concludes that the District had knowledge of the Complainant's protected activity at the time of its occurrence.

## Adverse Action

The Complainant was a teacher and a coach in the District and was issued two separate contracts, one for his teaching position and one for his coaching position.

The Complainant stated that on May 15, 2002, he was informed by the AD that his coaching contract would not be renewed for the 2002-2003 school year and he appealed this decision to the school principal on the same date. The school principal upheld the AD's decision. The Complainant also appealed the decision to the superintendent, your predecessor, but he was

Dr. Dan Powell
Page 3

refused a hearing. The Complainant then appealed to the Board on May 28, 2002, and the Board upheld the AD's decision on May 31, 2002. OCR, therefore, concludes that the District's decision to not renew the Complainant's coaching contract constituted adverse action against the Complainant.

**Causal Connection**

Because we determined that the Complainant engaged in a protected activity, that the District had knowledge of the protected activity, and that the termination constituted an adverse action, we then proceeded to determine whether a causal connection existed between the adverse action and the protected activity. Several types of evidence are considered: (1) closeness in time between knowledge of the protected activity and the adverse action; (2) change in treatment of the individual after the recipient had knowledge of the protected activity; and (3) treatment of the individual compared to other similarly-situated persons.

1.      Timing of Adverse Action

Evidence shows that the protected activity, i.e., the Complainant informing the principal and the volleyball coach that the football team was still receiving more meals than the volleyball team, occurred in April 2002. In May 2002, the Complainant was notified by the AD that his coaching contract would not be renewed. There is a close proximity in time between the date of the protected activity and the date of the adverse action.

2.      Change in Treatment

The Complainant was the head coach of the male varsity basketball team and had a winning record during his ten-year tenure. The Complainant stated that prior to informing high school officials that the football team was still receiving more meals than the volleyball team, he never received any negative feedback or comments regarding his performance. OCR found that the District did not have a formal evaluation process in place; however, there was no record of any complaints or negative comments against the Complainant.

The Complainant stated that after he made the above statement concerning meals, the AD terminated his coaching contract and told him the termination was because he did not "trust him." The Complainant stated that he asked the AD to give him some specific information on this decision but the AD would not provide him with any other details.

Evidence shows that the Complainant's coaching contract had been renewed each school year prior to the protected activity and was terminated after he informed school officials that the football team was still receiving more meals than the volleyball team. OCR, therefore, has determined that the termination of the Complainant's coaching contract constituted a change in treatment.

Dr. Dan Powell
Page 4

3.    Treatment of the Complainant compared to similarly-situated persons

Documentation revealed that during the past three school years, the AD terminated two coaching contracts, the Complainant's and that of another coach (Coach). The Complainant went through the District's three-step appeal process. At the final phase, the Complainant went before the Board to appeal the termination decisions rendered in the previous phases. Against its usual policy, the Board held two separate hearings instead of one hearing during which all parties are allowed to hear and/or rebut witness testimonies. One hearing was for the Complainant's testimony and the second hearing was for the AD's testimony. The AD testified that he did not "trust" the Complainant and that the Complainant seemed unhappy at Ninety-Six and negative about the Athletic Department. Because two separate hearings were held, the Complainant was unable to hear or rebut the AD's testimony. Interviews with Board members revealed that the Board did not obtain any objective information from the AD regarding his reasons for terminating the Complainant's contract. Documentation shows that the Board summarily upheld the Complainant's termination but no objective reasons were given for its decision. The decision stated that the Board would "take no action upon this matter."

In the Coach's appeal before the Board, one hearing was held. Documentation revealed that the AD presented specific information regarding his decision to not renew the Coach's contract. The information included the Coach not becoming familiar with the coaching handbook, failing to obtain the required Commercial Driver's License, failing to follow the principal's decision regarding accepting t-shirts that were donated to the softball team, and participating in a fundraiser that was not authorized by the appropriate officials. Documentation also revealed that the former superintendent rescinded the termination of the Coach's contract and provided a detailed written response for the actions taken by the District in the appeal.

OCR, therefore, has determined that the Complainant was treated differently than the Coach because the District: (1) held one hearing for the Coach and two separate grievance hearings for the Complainant; (2) failed to give the Complainant an opportunity to hear or rebut the AD's testimony; and (3) failed to present specific, objective reasons for the decision to terminate the Complainant's coaching contract.

**Reasons for the Recipient's Actions**

In the AD's testimony to the Board, he stated that he did not renew the Complainant's contract because: (1) the Complainant had not hidden the fact that he was not happy with the athletic program at Ninety-Six High School; (2) he did not trust the Complainant and that the Complainant had been told this before; (3) statements or questions from the Complainant had an "angle or an ulterior motive"; and (4) the Complainant made negative comments to other coaches, parents, and community members about the Athletic Department and was always undermining the program.

The Complainant provided several notes and memos from administrators and community members thanking or congratulating the Complainant for winning a game or positive conduct and OCR found no evidence of any documentation by the AD regarding problems with the

Dr. Dan Powell
Page 5

Complainant, or negative statements from other coaches, parents, or community members. OCR also found that the District did not have a formal evaluation process in place, nor were there any complaints or negative comments in the Complainant's personnel file. The only evaluations the AD and Complainant mentioned in their interviews were neutral evaluations (neither positive nor negative) given by the AD to schools where the Complainant had applied for other coaching positions.

When interviewed, the Chairman and two Board Members did not explain why the Board did not ask the AD for any specific, objective reasons for terminating the Complainant's contract. Several Board members stated that they had heard stories of the Complainant making degrading comments about the athletic program at Ninety-Six High School and, accusations of the Complainant being dishonest, jealous, detracting from the AD, being late for class and out-of-school a lot, and talking down to students and athletes. However, the Board members could not explain why they did not ask the Complainant for an explanation of the accusations they had heard. A Board member informed OCR that some Board members believed that the Complainant was involved with the previous Title IX athletic complaint and, if that was true, he should not be a coach in the District.

OCR has determined that the reasons proffered by the District regarding its treatment of the Complainant during his appeal process are pretextual. There was no specific, objective documentation that the District contemplated in terminating the Complainant's coaching contract prior to his advocating for female athletes and no explanation as to why the District deviated from its usual hearing procedures.

Based on the above, OCR concludes that the Complainant participated in a protected activity, the District had knowledge of the Complainant's protected activity, and took adverse action against the Complainant when it terminated his coaching contract. OCR also found a causal connection between the protected activity and the adverse action, and the District did not proffer legitimate nondiscriminatory reasons for its action. OCR, therefore, has determined that the District retaliated against the Complainant in violation of Title IX. The District, however, has agreed to voluntarily resolve the violation based on the actions set forth in the attached Resolution Agreement (Agreement). OCR will monitor the District's progress through reports to ensure that the agreed upon actions are completed. Compliance is contingent upon the District's implementation of the Agreement.

**Procedural Issues**

OCR's review of documents provided by the District during the course of the investigation raised procedural compliance issues regarding the implementation of the general provisions of Title IX. The Title IX regulation at 34 C.F.R. Section 106.8(b) requires institutions to adopt and publish grievance procedures providing for prompt and equitable resolution of complaints. OCR found that the District's grievance procedures lack time frames for the processing of grievances. In regard to the Complainant, the District also failed to implement its grievance procedures consistently, as written, for the conduct of appeal hearings.

Dr. Dan Powell
Page 6

In order to resolve this issue, the District has agreed to implement the actions stated in the Agreement which, when fully implemented, will meet the requirements of Title IX. OCR will monitor the implementation of the agreement.

The District is reminded that an institution that receives funds from the Department may not intimidate, threaten, coerce, or discriminate against anyone to interfere with any rights protected by the civil rights laws OCR enforces or because he or she has filed a complaint with OCR or participated in an investigation.

We appreciate the courtesy and cooperation extended to the staff of OCR during this investigation. If you have any questions regarding this complaint, please contact Ms. Doris V. Maye, Team Leader, at (404) 562-6419, or Ms. Debra Walker, Investigator, at (404) 562-6414.

Sincerely,

Gary S. Walker, Director
Atlanta Office, Southern Division
Office for Civil Rights

Enclosure

cc: Chief State School Officer

# EXHIBIT NO.   H

12-17-03   09:30    FROM-DUFF TURNER WHITE                803-790-0605           T-597   P.02/03   F-902
12/17/2003   09:31                                     803-790-0605           T-594   P.03/06   F-888

12-15-03   14:54    FROM-DUFF TURNER WHITE                803-790-0605

**Resolution Agreement**
**Greenwood County School District #52**
**04-03-1025**

The District agrees to take the following actions to resolve the issues of this complaint. These corrective measures are consistent with Title IX of the Education Amendments of 1972 and its implementing regulation.

1. The District will ensure that if Mr. Charles Moore (Complainant) applies for a coaching or teaching position in the District, he will be considered, without prejudice, just the same as all other applicants.

2. The District will expunge all records and documents, including written and taped, pertaining to the termination of the Complainant's coaching position.

3. If inquiries are made on the Complainant's past work history as a coach, the District will provide neutral or positive recommendations, but not negative, for the Complainant and not mention his termination.

4. The current District Superintendent will issue a letter to Athletic Director Dolittle (AD), advising him of his concerns regarding the dismissal of the Complainant, and putting the AD on notice that in the future, he should exercise better professional judgment in his handling of the termination/reassignment of employees under his supervision. His letter will also remind the AD of the need to make certain that all of his actions regarding employees should be taken in compliance with federal and state laws and pursuant to District policy. A copy of the letter will be placed in the AD's personnel file.

5. The District will ensure that the AD is provided with specific training regarding the laws of retaliation.

6. The District will revise its grievance procedures to include timeframes for resolving discrimination complaints. Also, the District agrees to implement its grievance procedures in a consistent manner regarding the number of meetings held and the opportunity to present/rebut evidence and review records.

7. The District will provide training on the revised grievance procedures to students, District staff, and Board members and publish them in the student and faculty handbooks.

12-17-03 8:04:36 FROM-DUFF TURNER WHITE 8:04cv-01236-GRA Date Filed 08/02/04 803-790-0605 Entry Number 22 T-587 Page 48 of 48 P.03/03 F-902

12-15-03 14:54 FROM-DUFF TURNER WHITE 803-790-2605 T-584 P.04/03 F-906

**Monitoring Requirements**

1. If the Complainant re-applies for a coaching position, the District will provide OCR with a copy of his application, a description of the position applied for, the name and copy of the application of the person selected, if not the Complainant, by September 30, 2004.

2. By January 30, 2004, the District will provide OCR with documentation that it has expunged the Complainant's records pertaining to the termination of his coaching position.

3. By January 30, 2004, the District will provide a description of the steps it has taken to ensure that the Complainant is provided with a positive or neutral recommendation, if any inquiries are made on his past work history as a coach.

4. By January 30, 2004, the District will provide OCR a copy of the letter issued to the AD, and documentation of the training provided to the AD on retaliation.

5. By January 30, 2004, the District will submit a copy of its revised grievance procedures for review and approval to OCR. Upon concurrence from OCR, the District will publish the grievance procedures in the 2004-2005 student and faculty handbooks.

6. Documentation that the grievance procedures have been published in the 2004-2005 student and faculty handbooks will be forwarded to OCR by September 30, 2004.

7. By September 30, 2004, evidence will be provided to OCR that students, District staff, and Board members were provided training on the revised grievance procedures.


Dr. Dan Powell
Superintendent
Greenwood County School District #52

12-17-03
Date


Gary S. Walker, Director
Atlanta Office, Southern Division
Office for Civil Rights

Date